

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

August 26, 1992

Honorable John Hannah
Office of the Secretary of State
Executive Division
State of Texas
P. O. Box 12697
Austin, Texas 78711-2697

Opinion No. DM-157

Re: Whether a health spa exempted from the security deposit requirement by the 1985 version of the Health Spa Act is exempt under the 1989 revision of the act and related questions (RQ-306)

Dear Mr. Hannah:

Your question concerns the security deposits that health-spa owners must file under article 5221*l*, V.T.C.S., the Health Spa Act. In particular, you wish to know whether any health spas are exempted from the security-deposit requirement.

Article 5221*l*, V.T.C.S., which is designed to protect customers of health-spa services, was adopted in 1985. Acts 1985, 69th Leg., ch. 13. It was substantially amended in 1989 by House Bill 863 of the 71st Legislature. Acts 1989, 71st Leg., ch. 1039. Responsibility for administering its provisions, initially vested in the Texas Department of Labor and Standards, was transferred to the Office of the Secretary of State by the 1989 legislation. Health spas must file a registration statement with the secretary of state before offering to sell or selling memberships. V.T.C.S. art. 5221*l*, § 8. In addition, a security bond must be filed with the secretary of state.

Section 10 of article 5221*l*, V.T.C.S., which sets out the security bond requirements, was amended in 1989. Prior to this amendment, section 10 included the following "grandfather clause":

> (a) *Except as provided by Subsection (d) of this section*, on or before the 30th day after the date a health spa opens its facilities for the use of its members, the health spa shall file with the department [of Labor and Standards] a surety bond. ... The bond ... shall be payable in favor of the state and shall be held for the benefit of any members of the health spa who suffer financial losses due to the insolvency or cessation of operation of the health spa. "Financial losses" shall mean and be limited to

> any unused or unearned portion of such member's dues or fees. . . .
>
> (*d*) *A health spa is exempt from the security requirements of this section* if the owner of the health spa owns at least one other spa in this state which has operated at one location for at least the two years preceding the effective date of this Act [September 1, 1985] and against which none of its members have initiated litigation or filed a complaint with any governmental authority in this state relating to the failure to open or the closing of the health spa.

Acts 1985, 69th Leg., ch. 13 (emphasis added).

Section 10(d) of the 1985 enactment provided a complete exemption from the surety-bond requirements for any new spa opened by the owner of a spa that had operated since September 1, 1983 in compliance with the stated conditions. In 1989 the legislature repealed section 10(d) and deleted the reference to it in section 10(a). Acts 1989, 71st Leg., ch. 1039, § 3.17.

The section 10(d) "grandfather clause" has been removed from the statute, but House Bill 863 included a savings clause, and you wish to know whether it preserved section 10(d) for any purpose. The savings clause reads as follows:

> Sec. 6.09. Health spas. (a) The security requirements imposed under Section 10, Health Spa Act . . . as amended by this Act, apply to a health spa that opens an initial facility on or after September 1, 1989, and to each additional location opened on or after September 1, 1989, by a health spa that opens an initial facility on or after September 1, 1989.
>
> (b) A health spa in operation before September 1, 1989, and any additional location opened by that health spa on or after September 1, 1989, is subject to the security requirements in effect on August 31, 1989, and the former law is continued in effect for that purpose.

Acts 1989, 71st Leg., ch. 1039, § 6.09.

A brief received in connection with this request argues that the language of section 6.09(b) preserves the language of former section 10(d), so that spas exempt

under that provision from filing a security deposit on August 31, 1989 continue to be exempt under the present version of the statute. To state this argument in terms of section 6.09(b), the version of section 10(d) applicable on August 31, 1989 established "security requirements" for spas within its provisions on that date, and the former "grandfather clause" is continued for those spas.

Your position is that section 6.09 establishes two different classes of health spas for the purpose of determining security deposit requirements. One class, described by subsection (a), consists of spas that open an initial facility on or after September 1, 1989, and of any additional location opened by those spas. The spas within section 6.09(a) are subject to the new security requirements adopted in 1989. The other class, described by subsection (b), consists of spas in operation before September 1, 1989, and of any new location opened by such spas after that date. Spas in this group are subject to the security requirements in effect on August 31, 1989. You believe that there is no longer any exemption from the security requirement of section 10, and that all spas in operation before September 1, 1989 are required to have a security bond on file.

We believe that the absence of an express savings clause for those spas formerly "grandfathered" by subsection 10(d) indicates that the legislature no longer wished them to be exempt from the security requirement. *See State v. Brady*, 118 S.W. 128 (Tex. 1909) (savings clause of a repealing statute is strictly construed). Section 6.09(b) states that the spas it applies to are "subject to the security requirements in effect on August 31, 1989." Thus, it indicates that all spas in that category are subject to security requirements, the amount of which shall be determined by reference to former law. The grandfather clause, strictly speaking, was not a "security requirement" of the former law, but an exemption from the security requirement; thus, section 6.09(b) does not keep that clause in effect.

Moreover, we believe that your interpretation of the savings clause is consistent with the legislative intent underlying House Bill 863. An express purpose of the Health Spa Act is to "safeguard the public against fraud, deceit, imposition, and financial hardship" in the field of health spa services by prohibiting contractual and marketing practices that had injured the public. V.T.C.S. art. 5221*l*, § 2. The act is to be liberally construed and applied to promote this purpose. *Id.* § 4.

One purpose of the 1989 legislation was to improve the consumer protection aspects of the Health Spa Act. House Comm. on Governmental Organization, Bill Analysis, H.B. 863, 71st Leg. (1989). The security deposit provision provides a

source from which health-spa members may recover any unused portion of their dues or fees if the health spa becomes insolvent or ceases operations. The 1985 version of subsection 10(d) allowed the owner of any health spa that had been satisfactorily established since September 1, 1983 to open new spas without any security deposit. Your reading of section 6.09 extends the security deposit requirement to all spas now open or to be opened in the future. This reading serves the consumer-protection purpose of the Health Spa Act and the 1989 amendments because it accords to all consumers of health-spa services a means of recouping unused dues or fees paid to a spa that becomes insolvent or ceases operations.

Accordingly, we agree that section 6.09 creates only two categories of health spas, one subject to the security requirements that became effective on September 1, 1989, and the other subject to the security requirements in effect on August 31, 1989. No health spas, even those grandfathered by the prior version of article 5221*l*, V.T.C.S., are now exempt from the security deposit requirement.

You inquire about the amount of security deposit to be filed under the Health Spa Act by a health spa that was exempt from the security-deposit requirement by the former version of the statute. When the Health Spa Act was adopted in 1985, it required security in the amount of 20 percent of prepayments, but not less than $20,000 or more than $50,000. Acts 1985, 69th Leg., ch. 13 (formerly codified as V.T.C.S. art. 5221*l*, § 10(b)). This security requirement applied to the spa for two years after the filing date, and thereafter only $5,000 in security had to be maintained. *Id.* (formerly codified as V.T.C.S. art. 5221*l*, § 10(c)). The 1989 enactment establishes a uniform $20,000 security deposit for all spas and requires maintenance of security in this amount for two years after the spa ceases business or until claims against it are satisfied or foreclosed by law. Acts 1989, 71st Leg., ch. 1039, § 3.17 (codified as V.T.C.S. art. 5221*l*, § 10(b), (c)). You contend that a spa that was previously exempt from the security deposit requirement must initially file $20,000 before it can be eligible for the reduction to $5,000.

A health spa that was exempt from the security deposit prior to September 1, 1989 is subject to the security deposit requirements in effect on August 31, 1989. Former section 10 required the security bond to be filed by the 30th day after the health spa opened its doors and set it as 20 percent of the total value of the prepayments received by the spa, but not less than $20,000 or more than $50,000. Acts 1985, 69th Leg., ch. 13. "Prepayment" was formerly defined as "a payment for all services or for the use of facilities made by members of a health spa before the first day the services or facilities are made available to the members." *Id.* After

maintaining the minimum $20,000 security for two years, the health spa is to maintain security in the amount of $5,000.

A health spa that was exempt from the initial security bond requirement under the former law cannot now comply with the requirement that it file a security bond within 30 days after opening the spa. Moreover, the former law based the amount of security bond on prepayments received prior to opening, an amount unlikely to be relevant to any present exposure for unpaid fees and dues for health spas that have operated since 1983. The spas that were formerly "grandfathered" had operated at one location for two years prior to the effective date of the 1985 statute without any member filing a lawsuit or a complaint with a governmental authority relating to the failure to open or the closing of the health spa. Acts 1985, 69th Leg., ch. 13. That two years of operation without such complaints or lawsuits appears to serve the same purposes as the requirement that a spa maintain at least $20,000 in security for the first two years of operation. In our opinion, health spas that were exempt from all security deposits under the now-repealed section 10(d) are now required to maintain security in the amount of $5,000 without first filing a security deposit of $20,000.

If a spa in operation on August 31, 1989 opens a new location after September 1, 1989, the new spa location will be able to file a security deposit by the 30th day after opening. The new spa location will therefore be required to file an initial security deposit of 20 percent of the total value of the prepayments it has received, but not less than $20,000 nor more than $50,000. It must maintain this amount of security for two years after the date the security is filed, and thereafter, it must continuously maintain security in the amount of $5,000.

## S U M M A R Y

V.T.C.S. article 5221*l*, the Health Spa Act, as amended in 1989, effective September 1, 1989, requires every health spa in the state to file a surety bond with the secretary of state. The security requirements imposed by the present version of the law applies to a health spa that opens an initial location on or after September 1, 1989, and to each additional location opened after that date by such spas. A health spa in operation before September 1, 1989, and any additional location opened by that health spa on or after September 1, 1989, is subject to the security requirements in effect on August 31, 1989. An

exemption for some health spas from all security requirements included in the prior version of the Health Spa Act has been repealed and is not continued in effect by the savings clause in the 1989 amendments. Health spas that were formerly exempted from the security requirement no longer have the benefit of that exemption.

Health spas that were exempt from all security deposits under the repealed provision are now required to maintain security in the amount of $5,000 without first filing a security deposit of $20,000. If a spa in operation on August 31, 1989 opens a new location after September 1, 1989, the new spa location must file an initial security deposit of 20 percent of the total value of the prepayments it has received, but not less than $20,000 nor more than $50,000. It must maintain this amount of security for two years after the date the security deposit is filed, and thereafter, it must continuously maintain security in the amount of $5,000.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General